BEER, Judge.
Appellee, Garden Hill Land Corporation (hereafter, Garden Hill) filed a suit for partition of certain immovable property in St. John the Baptist Parish. On October 24, 1972 the Twenty-Ninth Judicial District Court fixed the various interests in the partition and ordered the property sold at public auction. The judgment set out the terms and conditions of the sale: “ . . . taxes to be prorated as of the date of the act of sale, certificates and all expenses to be paid by the purchaser, and the act of sale to be passed before Paul Aucoin, Notary Public, at purchaser’s expense.”
*865 Subsequent to this judgment, a public sale was held and the minimum bid provided for in the judgment was not achieved. The court lowered the minimum bid requirement and the property was again offered at public sale by the Sheriff. On January 16, 1974, Garden Hill, George A. Lasseigne, Jr., Jules A. Carville, III, and Thomas E. Carville bought the property for the sum of $600,000.00. In addition to the ten percent deposit required (and later the balance of the purchase' price) appel-lees paid to the sheriff the following:
Sheriff P. D. Hebert.. Fees ...$ 210.00
" " " " .. Commission _ 18,000.00
L'Observateur. .Judicial Advertisements .. 329.00
Harold Montegut, Clerk of Court . 325.60
Harold J. Flynn, Surveyor . 250.00
P. D. Hebert, Tax Collector. .(1973 taxes) 220.40
Thereafter, at the confirmation of the judicial sale before Paul G. Aucoin, Notary Public, on March 30, 1974, a disagreement arose between the parties to the sale as to who was financially responsible for various “costs” and accordingly, on May 22, 1974, Garden Hill filed a Rule to Tax Costs in order to clear the matter up.
On July 1, 1974, Judge Malik heard the rule and on September 3, 1974 entered judgment which required the costs of the sale (including the notarial fee) to be paid by the purchasers (appellees) and further held that the “costs” of these “proceedings” which would be “assessed against the gross proceeds of [the] sale” included:
Sheriff P. D. Hebert. .Fees .$ 210.00
Sheriff P. D. Hebert. .Commission . 18,000.00
L'Observateur. .Judicial Advertisements .. 329.00
Harold J. Flynn, Surveyor . 250.00
Harold J. Montegut, Clerk of Court .... 325.60
P. D. Hebert, Tax Collector (1973 taxes) 220.40
This second part of the ruling, which is the reason for this appeal, had the practical effect of substantially reducing the net amount of proceeds available for distribution (and, in fact, already distributed) to the appellants-sellers. Furthermore, appellants, Succession of Cambre, et al (the sellers) contend that such a result gives a clearly improper retroactive advantage to the appellees-purchasers over other bidders at the sale. Appellants argue, with some weight, that a prospective purchaser who read the judicial advertisement of the sale [1] would conclude, as they did, that he (the prospective purchaser) would be required to pay those “costs” that purchasers-appellees have now successfully passed back to the sellers through the judgment in the Rule to Tax Costs. For this reason, as well as the contention that the wording of the judgment ordering the sale clearly indicates a result contrary to that reached by Judge Malik on the Rule to Tax Costs, appellants seek a reversal of the judgment on the Rule to Tax Costs rendered on September 3, 1974.
We agree with the observation made by appellants that the procedure followed in this matter has disadvantaged and inconvenienced them since the proceeds of the sale have been disbursed and, conceivably, already spent. On the other hand, we are confronted by a situation where the district court has, in its discretion, taxed “costs” in a way that cannot be said to be an abuse thereof. It is likely that if the sheriff, prior to distributing the funds, had made a deduction of the “costs” of “the proceedings” to cover all the items now at issue in this appeal, some amicable settlement of the matter would have resulted. But now appellants find that they must, in effect, pay back a part of the proceeds that they had good reason to believe were theirs alone.
*866 The chronological inequities which may exist cannot, however, obviate the conclusion that Judge Malik’s decision of September 3, 1974 is consistent with, and within the boundaries of, the discretion implicitly granted to the district court by LSA-R.S. 13:4533 which provides:
“The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and ail other costs allowed by the court, shall be taxed as costs.” (Emphasis ours.)
There is no contention that the amount of the “costs” are improper or that the commission of the sheriff (the largest amount, by far, at issue) was improperly or incorrectly calculated.[2] We are not required to, nor do we, reach any conclusions regarding the tangential issues concerning the validity of purchasers’ title to the property because of the procedure that was followed, or the responsibility, vel non, of the sheriff.
We hold only that Judge Malik acted within the boundaries of discretion he is obliged to observe in taxing costs and, accordingly, affirm his judgment of September 3, 1974. Each of the parties to this appeal will bear his own costs.
Affirmed.

. The judicial advertisement includes the following:
“Taxes are to be prorated as of the date of the act of sale. Certificates and all expenses are to be paid by the purchaser and the act of sale is to be passed before Paul Aucoin, Notary Public, at purchaser’s expense; and Paul Aucoin, Notary Public of this Parish is appointed to effect the partition of the proceeds thereof.
P. D. HEBERT, SHERIFF R. N. Songy, Chief Dep. ADV: Oct. 4 & Nov. 1, 1973”
(Emphasis ours.)

. LSA-R.S. 33:1428 provides, in pertinent part:
“(19) For commission on sales of property made by the sheriffs, three percent shall be allowed on the price of adjudication of immovable property, and six percent shall be allowed on the price of adjudication of movable property. When the amount necessary to be realized to satisfy any writ under which the property, movable or immovable, is to be offered for sale by the sheriffs, is in excess of fifty thousand dollars, including interest and costs, the sheriffs and the seizing creditor may, with the approval of the court, agree upon the fee or commission to be paid to the sheriffs for making the sale, irrespective of the rates hereinabove set forth, prior to the offer and adjudication of the property by the sheriffs. No agreement shall be valid which provides for a fee or commission in any case of less than twelve hundred dollars.
*i * * *
“These costs shall be due and collectible as provided for clerks of the district courts in ordinary suits, and when realized on any process of court by collections or sales. The above fee bill and mode of collecting same shall apply to coroners when acting in place of sheriffs.”