STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0576

MARY ANDREWS, TROYELENE WALLACE,
HATTIE VALLIAN, ALFRED FOLSE, AND ZELINA FOLSE

VERSUS

C. J. MARTS, ANJANETTE MARTS AND NEW MOUNT
ZION BAPTIST CHURCH OF CUT OFF, LOUISIANA

*Judgment Rendered:* NOV 1 5 2022

* * * * * * * *

Appealed from the
17th Judicial District Court
In and for the Lafourche
State of Louisiana
Case No. 139936

The Honorable Marla M. Abel, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Eugene G. Gouaux, Jr.<br>Eugene G. Gouaux, III<br>Lockport, Louisiana | Counsel for Plaintiffs/Appellees<br>Mary Andrews, Troyelene Wallace,<br>Hattie Vallian, Alfred Folse, and Zelina<br>Folse |
| Michael S. Zerlin<br>Thibodaux, Louisiana | Counsel for Defendants/Appellants<br>C. J. Marts, Anjanette Marts, and New<br>Mount Zion Baptist Church of Cut Off,<br>Louisiana |

* * * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Penzato, J., concurs

**LANIER, J.**

In this mandamus action, the defendants challenge the trial court's judgment ordering the New Mount Zion Baptist Church of Cut Off, Louisiana ("the Church") to conduct a general membership meeting on the first Sunday in September in accordance with its articles of incorporation. The court further ordered that certain named individuals, who were members of the Church, would be considered in good standing for purposes of the meeting. For the reasons set forth herein, we vacate the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

According to the record, the Church is a non-profit corporation that has been in existence since 1963. Petitioners, Mary Andrews, Troyelene Wallace, Hattie Vallian, Alfred Folse, and Zelina Folse, are all members in good standing with the Church. Unhappy with the Church not being "run according to its Articles of Incorporation," petitioners and other members of the Church mailed a certified letter requesting that elections be permitted in accordance with the articles of incorporation. Following no response to this letter, a meeting of the membership was held on August 15, 2019, to elect a board of trustees. Members were given proper notice of the meeting, and, although the meeting results were mailed to C.J. Marts, President of the Church's board of trustees, there was still no response.

Thereafter, petitioners filed a writ of mandamus against the defendants, C.J. Marts, Anjanette Marts, Secretary/Treasurer of the Church's board of trustees, and the Church, requesting that the trial court require the Church's board of trustees to hold a general membership meeting on the "First Sunday of September of each year" as set forth in Article VIII of the Articles of Incorporation. No answer was filed by the defendants. See La. Code Civ. P. art. 3783. The matter proceeded to hearing before the trial court on May 13, 2021, at which time the court heard

2

argument from counsel and testimony from Ronald C. Marts, deacon and chairman of the Church's board of trustees.

At the hearing, the parties stipulated that the discussion would focus on "different groups of individuals" who were members of the Church and that they had agreed to who is in each group. The first group consisted of individuals who had always been involved with the Church and members in good standing. The second group of individuals were members who had left the Church for some time, but had reestablished membership with the Church. The third group of individuals was described as individuals who were in good standing with the Church in December 2018, "a couple" of who "maybe, attended a time or two but they have not contributed financially" and "have not been regularly attending services."

Counsel for petitioners explained that following a "financial disagreement between the groups of individuals" in December 2018, the individuals in group three sought legal counsel in January 2019 and have been represented by counsel since that time. Because of numerous continuances, some of them due to the Covid-19 pandemic, counsel indicated that the proceedings had been delayed. Nonetheless, he requested that the trial court recognize the individuals in group three as members of the Church in good standing such that they would be able to participate in the next meeting of the membership and election of the board of directors.

Deacon Marts testified at the hearing that he had been a member of the Church for over fifty years, a deacon for more than twenty years, and chairman of the board of trustees since 2020. He stated that he was never advised of a financial dispute in 2018 by any individuals in group three or any members of the Church. Deacon Marts noted that the procedure would have been to bring any such grievance to the board of trustees and that he, as chairman, would have been obligated to have a discussion with the leaders of the church. Deacon Marts stated

3

that the pastor of the Church in 2018, Reverend Samuel Triplett, had been asked to resign his position because he "wanted to control the business aspects" of the Church. He added that Reverend Triplett's termination caused some issues in the Church, as members of the Church, including the individuals in group three, did not agree with the dismissal.

When asked about the Church's annual business meeting, Deacon Marts indicated that the meeting was held in January of each year. Although acknowledging that the Church's charter specifies that the meeting be held in September, he noted that "there was a period of time in that year following the charter when the bylaws were created, that, that meeting time was changed to January." Deacon Marts testified that there was a meeting in January 2021 at which time general business aspects of the Church were discussed, the members of the Church were reelected by acclimation, and financial matters were voted on by separate motions. He added that although some of the individuals from group three were at the meeting, no grievances were raised and there "were no nays" during the voice vote.

At the conclusion of the hearing, the trial court provided the following reasons from the bench:

> I have reviewed the bylaws as filed in the Lafourche Parish Clerk of Court records, and will note that they were incorporated in 1963. And those articles provide that the general meeting of the corporation shall be on the first Sunday of September of each year and that the corporation is governed by a board of five trustees. The trustees are elected at that general membership meeting on the first Sunday of September of each year.
> The Court, also considering the facts of this case, where, at some point, at the end of 2018, the petitioners and the members of Group Number Three that we've been referring to had some sort of issue with the finances of the church. They sought an attorney, sought legal counsel. At some point mailed a letter by certified mail in January of 2019 requesting that there be a meeting under the articles of incorporation and the bylaws.
> I assume that, based on the arguments of counsel, there was some communication between the members about trying to resolve any issues that was not successful. This petition was filed in

4

December of 2019 and, as Mr. Gouaux stated earlier, because of issues related primarily to Covid-19 but also some scheduling issues, it has been continued to this date.

The Court has to apply the law as it relates to a corporation, despite the fact that this corporation is a church, which I will, again, reiterate is something that does not come up very often. However, it's the Court's opinion that based on the articles of incorporation, the church is required to hold its annual membership meeting in September. The petitioners have requested that it be held within thirty to forty-five days. The Court does not believe that it has the authority to order the church to do that because it is not in the bylaws or in the articles of incorporation. However, the articles of incorporation do specifically state that the general meeting shall be held on the first Sunday of September so the Court will order that the church hold its general meeting in September in accordance with Article 8 of the articles of incorporation.

The next issue is related to the standing of the members in Category Three, which the Court believes are nineteen people total. I recognize that this case has gone on for some period of time, again, mostly because of the pandemic in the last year. However, I believe that the members who were in good standing at the time that the issue was raised in December of 2018 and then ultimately there was a request sent in January of 2019 to hold a meeting, that they were members in good standing at that time that, for the purposes of the meeting this year, which is September of 2021, those members should be afforded the standing - to be treated as members in good standing. However, I do not think that they should be treated as members in good standing if they chose not to attend the September meeting.

If they attend the September meeting, the meeting shall be held and the election shall be held in accordance with the [Church's] traditions, bylaws, articles of incorporation that have been in place. So the only - the only difference is that those nineteen members should be treated as members in good standing for purposes of the September meeting. If they do not attend the September meeting, they will have to reestablish membership with the church in accordance with the church's rules. So should they [choose] not to participate in that September meeting, they will have to reestablish their membership as Mr. Marts testified. However, I think that given the issue that was raised in late 2018, early 2019, the fact that the Court caused delays, frankly, in not being able to handle the case because of the shutdowns and Covid restrictions, I believe that it is fair to give them the standing that they had in 2018, early 2019, when the issue was raised.

The court signed a judgment on June 3, 2021, ordering the Church to "conduct a general meeting of the corporation on the First Sunday of September at which time a Board of Five Trustees shall be elected by the members who are in good standing as per Article VIII of the Articles of Incorporation of the Church." The judgment further ordered that certain named individuals would be "considered in good

5

standing for the purposes of participating and voting on matters before the membership, including a vote on the Board of Trustees, at that September meeting." This appeal by the Church, C.J. Marts, and Anjanette Marts followed.

This court will not address the assignment of error raised on appeal because this court finds this judgment must be vacated. Other than the testimony of Deacon Marts, there was no other evidence introduced, by either party, in support of or against the writ of mandamus. Accordingly, the trial court erred in granting the judgment.

## LAW AND ANALYSIS

Upon review of the record in this matter, this court finds that petitioners failed to formally introduce any evidence at the hearing on the writ of mandamus. While the Church's Articles of Incorporation were made part of the record by attaching them to petition for writ of mandamus and were reviewed by the trial judge, this evidence was never introduced at the hearing and was not properly made part of the record.[1] A copy of any written instrument that is an exhibit to a pleading is a part thereof. La. Code Civ. P. art. 853. However, the documents are not evidence; they are simply part of the pleadings. **Jackson v. Gordon**, 381 So.2d 520, 521 (La. App. 1 Cir. 1980). Pleadings are not evidence. **In re Melancon**, 2005-1702 (La. 7/10/06), 935 So.2d 661, 666. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. **Revelry Food Group, LLC v. Nguyen Property Investment, LLC,** 2021-0881 (La. App. 1 Cir. 2/25/22), 340 So.3d 1151, 1155 n.2.

In summary, the evidence in question was not properly introduced and admitted in the trial court and therefore may not be reviewed by this court. See **Denoux v. Vessel Management Services, Inc.,** 2007-2143 (La.5/21/08), 983

---

[1] A court may not consider exhibits filed in the record, which were not filed into evidence, unless authorized by law to do so. **State ex rel. Guste v. Thompson**, 532 So.2d 524, 527 n.2 (La. App. 1 Cir. 1988).

6

So.2d 84, 88-89. Accordingly, as there was no evidence properly before the trial court to support the ruling, this court finds that the trial court erred in granting judgment in favor of petitioners and against defendants.

## CONCLUSION

Based on a lack of such evidence, the trial court erroneously considered evidence not properly offered and introduced at the hearing on petitioners' writ of mandamus and relied upon that evidence in rendering the judgment. Accordingly, we vacate the judgment in favor of petitioners. We assess all costs associated with this appeal against petitioners, Mary Andrews, Troyelene Wallace, Hattie Vallian, Alfred Folse, and Zelina Folse.

**VACATED.**